UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE


PETER NEKIC                                )
                                           )
v.                                         )        NO. 2:12-cv-358
                                           )        *Greer/Inman*
STEVE BURNS, NEIL MATHEWS,                 )
and MELANIE GREGORY                        )


## MEMORANDUM and ORDER


Acting *pro se* and requesting a jury trial, pretrial detainee Peter Nekic, brings this civil

rights action for monetary and injunctive relief under 42 U.S.C. § 1983, against Greene County

Sheriff Steve Burns, Greene County Detention Center [GCDC] Administrator Neil Mathews,

and a former inspector for the Tennessee Correctional Institution (TCI), Melanie Gregory.

Although plaintiff's application to proceed *in forma pauperis* reflects a balance of zero (0) in

his inmate trust account, it remains that, as a prisoner, he is responsible for paying the filing

fee. 28 U.S.C. § 1915(b)(1).

Plaintiff therefore is **ASSESSED** the full filing fee of three-hundred, fifty dollars

($350.00). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997) *overruled on other*

*grounds by Jones v. Bock*, 549 U.S. 199 (2007). However, because plaintiff is unable to pay

the full filing fee at this time, he shall pay the fee on an installment basis, when and if

sufficient funds become available. The custodian of plaintiff's inmate trust account at the

institution where he now resides is **DIRECTED** to submit to the Clerk of Court, twenty

percent (20%) of plaintiff's preceding monthly income credited to the account, but only when the amount in the account exceeds ten dollars ($10), until the full $350 fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to mail a copy of this Order to the custodian of inmate trust accounts at plaintiff's current place of confinement to ensure compliance with the assessment procedures outlined herein. All payments should be sent to: Clerk's Office, USDC; 220 W. Depot Street, Suite 200; Greeneville, TN 37743.

Plaintiff claims, in his complaint, that he was arrested on February 28, 2012, and thereafter placed in the GCDC, which is 60 to 70% overcrowded, as reported in an article in the Greeneville Sun on June 20, 2012. Thereafter, he was given "a piece of plastic and made to sleep on a bare concrete floor in a cell designed for (4) inmates but housed (8)," (Compl. at 4). As Ground One of his pleading, plaintiff lists the general conditions which were imposed on him in violation of his constitutional rights, of unidentified state and federal standards, and of the unspecified guidelines for the treatment of pretrial detainees. Among those conditions are:

(1)     holes in the roof/ceiling, resulting in flooding of the floors when it rains;

(2)      black mold growing on the walls; inmates must sleep on mats without stuffing;

(3)     lack of adequate soap and toilet paper; and

(4)     temperatures in the housing pod fluctuate between extremely cold and extremely hot.

Other conditions are asserted as separate grounds for relief. More specifically, as

2

Ground Two, the challenged condition encompasses a lack of adequate sun light, fresh air and recreation. Plaintiff asserts that, for nearly six months (February 28, 2012 - August 20, 2012), he was allowed access to these three things only five times, for a period of 45 minutes to one hour, when he was permitted to engage in "walking recreation" on a gym floor or an outdoor roof pen, the latter of which measures 25' by 45' and, potentially, could have contained sixty or more inmates. Plaintiff claims that this conditions identified in Ground Two have contributed adversely to his unidentified mental health issues.

In Ground Three, plaintiff maintains that the GCDC lacks an adequate grievance system, and in Ground Four, that the facility serves half cooked, cold, often outdated or spoiled food, which lacks adequate nutrition. According to the complaint, a typical breakfast consists of cold, flavorless flour gravy, two pieces of stale white bread, ½ pint of fat-free milk, one boiled egg, and 2-3 tablespoons of canned fruit; lunch of two pieces of stale bread, one slice of American cheese, cold water, and a small orange; and dinner of cold, half-cooked unflavored soup beans and cabbage, cold, overcooked, soupy squash, and one cup of highly-diluted, powdered and usually lukewarm milk drink. Plaintiff questions the nutritional value of these meals and believes they have contributed to his unidentified but declining physical and mental health.

Ground Five contains allegations that plaintiff has been denied adequate medical care for a serious medical condition, to wit, severe back (and arthritic) problems, which have developed due to his being forced to sleep on a cold concrete floor on a thin piece of plastic,

3

covered only by a blanket. Plaintiff unsuccessfully tried to speak to a nurse during medication call, but was told that he must submit a "medical request." He submitted such a request on May 3 and May 9 of 2012, but no response was given. Plaintiff then signed up for "sick call" on July 15, 2012, but likewise received no response. According to the complaint, "[t]he extent of specific/ or chronic conditions suffered by plaintiff has yet to be determined," (Compl. at 9).

To remedy the alleged wrongs purportedly visited upon plaintiff, he would have defendants provide expert medical doctors to conduct a psychological examination on him to determine the extent of his injuries and to pay him actual, compensatory, future and punitive damages.

The Court now must screen the complaint to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or because monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A. In performing this task, the Court realizes the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A complaint which contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009). Instead, the pleading must encompass "factual content that allows the court to draw the reasonable inference that the defendant is liable for

4

the misconduct alleged," so as to clothe the claim in "facial plausibility." *Id.*

At the outset, several of the grounds asserted for relief fail to state a constitutional claim. In Ground Three, for example, plaintiff maintains that he filed grievances regarding the subject conditions but received no response to his grievances, thus concluding that he was denied his right to a grievance system. Prisoners, however, have "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Michigan Dept. of Corr.*, 128 Fed. Appx. 441, 445, 2005 WL 742743, *3 (6th Cir. Apr. 1, 2005) (listing cases); *see Adams v. Rich*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). This claim is **DISMISSED** for failure to state a claim.

Likewise, in Ground Four, plaintiff complains about the food, but his complaints largely involve the poor quality of the food. Under the Eighth Amendment, prisoners must be provided meals nutritionally sufficient to sustain their normal health. *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977). While food served to inmates must be nutritionally adequate, problems with the quality (i.e., temperature, etc.) of food, generally, are not of constitutional magnitude. *Thaddeus-X v. Blatter*, 175 F.3d 378, 404-05 (6th Cir. 1999) (Suhrheinrich, J., concurring in part and dissenting in part) (citing, *inter alia*, *Cunningham*, 567 F.2d at 660)). Plaintiff surmises that the nutritional content of the food he is served at the GCDC is inadequate, but he has failed to indicate that he lost weight, developed any food-borne illness, or otherwise was sickened as a result of eating the food. Absent contentions

5

such as these latter ones, there is nothing factual from which the Court can reasonably infer that the food served to inmates at the GCDC falls below the constitutional nutritional or sanitary floor. This claim is also **DISMISSED** for failure to state a claim.

In Ground Five, plaintiff indicates that he was denied medical care for a "severe back (and arthritic) problem" caused by sleeping on the floor, though he also explains that it has yet to be determined whether he has any "specific/or chronic conditions," and though he requests that a psychological examination be performed by expert medical doctors to determine the extent of his injuries, (Compl. at 9-10).

A prisoner states a claim for the denial of medical care under the Eighth Amendment by alleging prison officials were deliberately indifferent to his serious medical needs.[1] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal punctuation and citation omitted). An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To demonstrate deliberate indifference, an inmate must show that the prison official knew of and disregarded an excessive risk to inmate

---

[1] A pretrial detainee, such as plaintiff, has a right to constitutional prison conditions through the Fourteenth Amendment Due Process Clause, which is analogous to the Eighth Amendment rights of prisoners. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). The Court will refer to the Eighth Amendment in the discussion of this ground, since the same analysis applies under the Fourteenth Amendment.

health or safety.  *Farmer v. Brennan*, 511 U.S. at 835-840.

Even if the Court assumes that plaintiff's alleged severe back problem presents a serious medical need, *see e.g., Estelle*, 429 U.S. at 107 (presuming that prisoner's contention of  severe back pain was sufficiently serious for Eighth Amendment purposes), there is no evidence of deliberate indifference on the part of any named defendant.  *Farmer* explains that deliberate indifference is evidenced where a jail official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Here, there are no allegations of fact to suggest the existence of the required knowledge (and hence, the culpable mental state) on the part of any defendant (none of whom appear to be a provider of medical care at the GCDC) and, without allegations addressing the subjective component of an Eighth Amendment claim, plaintiff's medical claim falls short.  Ground Five is likewise **DISMISSED** for failure to state a claim.

No allegations in the complaint connect defendant Melanie Gregory, whom plaintiff describes as a former TCI Inspector, to the operation of the GCDC, much less to the claimed unlawful conditions in that facility.  Accordingly, she is **DISMISSED** as a defendant in this lawsuit for plaintiff's failure to state a claim against her.

Because the Court cannot say that the allegations encompassed in Grounds One and Two are frivolous or malicious or that they fail to state a claim, they will be allowed to proceed past the screening stage.

7

Accordingly, the Clerk is **DIRECTED** to send plaintiff two service packets (each containing a blank summons and SM 285 form) for the remaining defendants. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of the date of receipt of this Order. At that time the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

Defendants shall answer or otherwise respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12. Defendants' failure to respond in a timely fashion to the complaint may result in entry of judgment by default against them.

Plaintiff is **ORDERED** to inform the court and defendants, or their counsel of record, immediately of any address changes. Failure to provide a correct address to this Court within ten (10) days following any change of address will result in the dismissal of this action.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

8